**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONNA BELL, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br> v.<br><br> GREENBRIER INTERNATIONAL, INC. D/B/A DOLLAR TREE, and COLONNA BROTHERS, INC.,<br><br>  Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Donna Bell ("Plaintiff") brings this Class Action Complaint against Defendants Greenbrier International, Inc. d/b/a Dollar Tree ("Dollar Tree") and Colonna Brothers, Inc. ("Colonna") (collectively "Defendants"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.     This is a civil class action brought by Plaintiff on behalf of all consumers who purchased Supreme Tradition Ground Cinnamon (the "Product") for normal, household use.  The Product is defective because, undisclosed to consumers, it is contaminated with lead.

2.     Lead is a highly toxic metal that has severe deleterious effects on every organ in the human body.  Lead exposure can lead to convulsions, coma, or even death.  In children, lead is known to cause irreversible damage to brain development, leading to lifelong learning disabilities

and behavioral disorders.  No level of lead is "normal" in the human body.  Lead is not used in any biological processes in the body, and it is toxic at any level of exposure.

3.     Defendants represent that the Product is safe to ingest.  In reality, the Product contains lead and is therefore toxic and harmful.

4.     Plaintiff seeks damages and equitable remedies for herself, and for the proposed Classes.

## I.   PARTIES

### A.  Plaintiff

5.     Plaintiff Donna Bell is a resident and citizen of the Bronx, New York who purchased Supreme Tradition cinnamon from a Dollar Tree store and used the Product within the relevant time period.

### B.  Defendant

6.     Defendant Colonna Brothers, Inc. is a for-profit corporation incorporated in New Jersey with its principal place of business in North Bergen, New Jersey, and was doing business in the State of New York during all relevant times.  Colonna bills itself as a "family-owned business" that makes and distributes cheese, spices, and other food items.[1]  In addition to manufacturing and distributing Colonna brand spices, the company provides private label service for other companies.  That is, Colonna Brothers manufactures spices along with Colonna-branded spices and brands and distributes them for other companies.  Greenbrier in one such company.

7.     Greenbrier International, Inc. is a Delaware corporation with its principal place of business in Chesapeake, Virginia.  Greenbrier, better known as Dollar Tree, is a discount supermarket chain with thousands of locations across the country.  Dollar Tree owns the Supreme

---

[1] *Available at* https://www.colonnabrothers.com/new-page-80 (last accessed April 17, 2024).

Tradition name and contracts with Colonna to manufacture and distribute Supreme Tradition spices, including *inter alia* the Product.

## II.    JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more proposed Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.    This Court has personal jurisdiction over Defendants because they have substantial aggregate contacts with this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States and the State of New York.

10.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendants transact business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

### III.    FACTUAL ALLEGATIONS

#### A.  Supreme Tradition Cinnamon

11.    Colonna touts itself as a family-owned business that has been around since 1918. According to Colonna's website, "[w]ith over 105 years in business Colonna Brothers, Inc. makes it our mission to provide only the best products and services to our customers."[2]

12.    Colonna does substantial business delivering private label products for retail chains including *inter alia* Dollar Tree.

13.    With "four generations and over 100 years in business," Colonna touts its promise "to deliver quality and service to satisfied customers with . . . spices [and] seasonings."[3]

14.    Colonna egregiously violated the trust it had built with consumers and broke its commitment to quality products when it manufactured and distributed the Products, which were contaminated with lead.

15.    Dollar Tree, as the owner of the Supreme Tradition brand, shares responsibility for this harmful injury to public health.  Not only does Dollar Tree stand behind its brand, but it takes the Products it contracts with Colonna to manufacture and sells them to consumers in its many Dollar Tree locations.

#### B.  Lead

16.    Lead is a naturally occurring metal that, until half a century ago, was used in a wide variety of products including gasoline, paint, pipes, batteries, and household cosmetics.[4]  As the many deleterious health effects of lead became clearer, the United States aggressively phased out its use.  In 1973, the federal government began limiting lead in gasoline, and leaded gasoline was

---

2 *Available at* https://www.colonnabrothers.com/new-page-80 (last visited April 17, 2024).

3 *Available at* https://www.colonnabrothers.com (last visited April 18, 2024).

4 *Available at* https://www.niehs.nih.gov/health/topics/agents/lead (last visited April 17, 2024).

completely eliminated in the U.S. by 1996.[5]  In 1978, the use of lead-based house paints was banned.[6]  In 1986, the use of lead was further restricted in building materials including solders, faucets, and pipes.[7]

17.    Lead can also enter the body through contaminated water or food.  The NIH has unequivocally stated that "No blood lead level is safe."[8]  The food industry has known for decades that lead is highly toxic and should not be included in any consumer product, let alone products that are ingested, such as food and beverages.

18.    Defendants note the dangers of lead in their recall acknowledging lead in the Product, stating that:

> [S]igns and symptoms of lead exposure are more likely with acute exposure to higher levels of lead or chronic exposure to lead.  The effects depend upon the amount and duration of lead exposure and age/body weight.  If a child is exposed to enough lead for a protracted period of time [] permanent damage to the central nervous system may occur.  This can result in learning disorders, developmental defects, and other long-term health problems.  For adults, chronic lead exposure is associated with kidney dysfunction, hypertension, and neurocognitive effects.[9]

19.    Defendants' list of adverse health effects is far from exhaustive.  Lead is additionally associated with reproductive problems in both men and women, high blood pressure, nerve disorders, memory and concentration issues, muscle and joint pain, hearing problems, headaches, and more.[10]

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Available at* https://www.colonnabrothers.com/class2recall (last visited April 19, 2024).

[10] *Available at* https://www.epa.gov/lead/what-are-some-health-effects-lead (last visited April 19, 2024).

20.     According to the FDA:

Lead is toxic to humans and can affect people of any age or health status. The potential for adverse health effects from consuming food contaminated with lead vary depending on the level of lead in the food; age of the consumer; length, amount, and frequency of exposure to lead in the food; and other exposures to different sources of lead and to beneficial nutrients.

The most serious effects of lead exposure can occur during times of active brain development. High levels of exposure to lead in utero, infancy, and early childhood can lead to neurological effects such as learning disabilities, behavior difficulties, and lowered IQ. The very young are particularly vulnerable to the potential harmful effects from lead exposure because of their smaller body sizes and rapid metabolism and growth. For adults, chronic lead exposure is associated with kidney dysfunction, hypertension, and neurocognitive effects.[11]

21.     Due to its toxicity, lead is included on the California Proposition 65 list, which notes that lead toxicity is associated with cancer, developmental toxicity, female reproductive toxicity, and male reproductive toxicity.[12]

**C.  An FDA Investigation Finds Lead in the Product**

22.     Earlier this year, the FDA conducted a targeted lead analysis survey of ground cinnamon products following the October 2023 voluntary recall of cinnamon apple puree and applesauce products due to elevated lead levels linked to the cinnamon in those products which contributed to lead poisoning in children.[13]

---

[11] *Available at* https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=Health%20Effects%20Information&text=The%20most%20serious%20effects%20of,behavior%20difficulties%2C%20and%20lowered%20IQ. (last visited May 3, 2024).

[12] Available at https://oehha.ca.gov/proposition-65/proposition-65-list (last visited April 30, 2024).

[13] *Available at* https://www.fda.gov/food/conversations-experts-food-topics/conversation-fda-steps-agency-taking-address-unsafe-levels-lead-found-cinnamon (last visited April 30, 2024).

23.     On March 6, 2024, following the results of its study, the FDA issued a safety alert advising consumers not to buy or eat certain ground cinnamon products, including the Product, because the samples of these products that were collected were found to contain elevated levels of lead.

24.     In conducting the study, the FDA collected and tested 75 samples from different retail locations.[14]  State agencies including the Maryland Department of Health and the Missouri Department of Health performed additional analysis as part of the testing.

25.     This testing revealed lead concentration of between 2.03 and 3.37 parts per million in the Supreme Tradition Ground Cinnamon Product.[15]  In contrast, proposed FDA action levels for lead contamination range from 10 to 20 parts per *billion*[16]—hundreds of times less than the levels found in the Product.  Based on these clear findings that the products were adulterated with lead, the FDA issued a safety alert and recommended a voluntary recall of the Product and five other brands of cinnamon each containing elevated lead levels.

26.     The Federal Food, Drug, and Cosmetic Act (FD&C Act) prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded."  21 U.S.C. § 331(a).

27.     Under the New York Food, Drug and Cosmetic Act, New York has expressly adopted the federal labeling requirements of the Act.  The definition of "adulterated" is exactly the same as the FD&C Act under NY Public Health Law §71.05(e).  Thus, a violation of federal labeling laws is an independent violation of New York law and actionable as such.

---

[14] *Id.*

[15] Available at https://www.fda.gov/food/alerts-advisories-safety-information/fda-alert-concerning-certain-cinnamon-products-due-presence-elevated-levels-lead (last visited April 19, 2024).

[16] *Available at* https://www.fda.gov/news-events/press-announcements/fda-announces-action-levels-lead-categories-processed-baby-foods (last visited May 1, 2024).

**D. Defendants Recall the Supreme Tradition Ground Cinnamon Product**

28.     Defendants recalled the Product on March 6, 2024, citing "a possible health risk due to elevated lead levels" in the Product.[17]

29.     Defendants also noted that the Product "was distributed nationwide through retail stores and mail order."

30.     Defendants conceded that the recall was in response to the FDA testing discussed above.  While Colonna characterizes the recall as "voluntary," it notes that the recall was "requested by the FDA."[18]

**E. Defendants Should Have Known the Product Was Adulterated and Illegal to Sell**

31.     Colonna manufactures the Product.  It has or should have reasonable measures in place to test the safety of its products.  It certainly leads consumers to believe it does when it repeatedly touts its family-run hundred-year commitment to quality.

32.     Dollar Tree owns the Product brand, contracts with Colonna to manufacture and distribute the Product on its behalf, and sells the Product directly to consumers.  Dollar Tree is responsible for ensuring the products it contracts with vendors to manufacture and distribute are safe for human consumption and not contaminated with dangerous, toxic substances like lead. Dollar Tree flouted this responsibility and sold its lead-contaminated Product to consumers nationwide.

## PLAINTIFF'S FACTUAL ALLEGATIONS

33.     Plaintiff Bell purchased the Supreme Tradition Ground Cinnamon in or around March 2024 at a Dollar Tree store located in the Bronx, New York.

---

[17] *Available at* https://www.colonnabrothers.com/class2recall (last visited April 19, 2024).
[18] *Id.*

34.     Nowhere on the packaging did Defendants disclose that the Product is contaminated with lead.

35.     If Plaintiff Bell had been aware of the existence of lead in the Product, she would not have purchased the Product or would have paid significantly less for the Product.  As a result of Defendants' actions, Plaintiff Bell has incurred damages, including economic damages.

36.     Plaintiff and the Classes have suffered injury in fact and have lost money as a result of Defendants' unlawful sale of the Product.  Indeed, no reasonable consumer, including Plaintiff, would have purchased the Product had they known it was adulterated and/or misbranded.

37.     Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from their omissions surrounding lead contamination affecting the Product.

38.     Accordingly, Plaintiff and the Classes suffered injury in fact and lost money as a result of Defendants' misleading representations and omissions and did not receive the benefit-of-the-bargain.

39.     Plaintiff and the Classes' injury is underscored by the fact that numerous other cinnamon products at comparable prices exist that are not contaminated with lead.

40.     Plaintiff and the Classes may be harmed again in the future because they want to purchase the Product in the future; however, without injunctive relief Plaintiff would not be able to know or trust that Defendants will truthfully and legally label the Product, will safely manufacture the Product or ensure adequate quality, and will remove lead from its Product in the future, and thus they would be likely to be misled again.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

> **National Class:**  During the fullest period allowed by law, all persons who purchased Supreme Tradition Ground Cinnamon for their personal use and not for resale in the United States.

> **New York Subclass:** During the fullest period allowed by law, all persons who purchased Supreme Tradition Ground Cinnamon for their personal use and not for resale in the State of New York.

42.     Members of the Classes described are referred to as "Class Members" or members of the "Classes."

43.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or any of their parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

44.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45.     Plaintiff reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

46.      **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Classes are so numerous that individual joinder of all Class Members is impracticable.  On information and belief, Class Members number in the thousands to millions.  The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendants' books and records.  Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

47.      **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes.  These common questions of law or fact include, but are not limited to, the following:

a)  Whether the Product contains lead;

b)  Whether Defendants omitted or failed to disclose material information to Plaintiff and Class Members regarding the Product;

c)  Whether the Product is defectively designed, formulated, and/or manufactured;

d)  Whether Defendants knew or reasonably should have known about lead contamination in the Product prior to distributing and selling it to Plaintiff and Class Members;

e)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is deceptive;

f)  Whether Defendants' actions violate the consumer protection statutes invoked herein;

g)  Whether Defendants were unjustly enriched at the expense of the Plaintiff and Class Members;

h)  Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

i)  Whether Plaintiff and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

j)  Whether Plaintiff and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

48.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class Members.  Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

49.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the presence of lead in the Product.  Plaintiff shares the aforementioned facts and legal claims or questions with Class Members, and Plaintiff and all Class Members have been similarly affected by Defendants' common course of conduct alleged herein.  Plaintiff and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' deceptive omission of material fact and misrepresentations regarding the presence of lead in the Product.

50.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Class Members they seek to represent.  Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation.  Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all Class Members.  Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

51. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**
Absent a class action, Class Members will continue to suffer the harm described herein, for which
they would have no remedy.  Even if separate actions could be brought by individual consumers,
the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court
and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be
dispositive of the interests of similarly situated consumers, substantially impeding their ability to
protect their interests, while establishing incompatible standards of conduct for Defendants.
Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

52. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**
Defendants have acted or refused to act on grounds generally applicable to Plaintiff and all
Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief,
as described below, with respect to the Classes as a whole.

53. **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is
superior to any other available methods for the fair and efficient adjudication of the present
controversy for at least the following reasons:

- The damages suffered by each individual proposed Class Member do not justify
  the burden and expense of individual prosecution of the complex and extensive
  litigation necessitated by Defendants' conduct;

- Even if individual Class Members had the resources to pursue individual
  litigation, it would be unduly burdensome to the courts in which the individual
  litigation would proceed;

- The claims presented in this case predominate over any questions of law or fact
  affecting individual Class Members;

- Individual joinder of all proposed Class Members is impracticable;

- Absent a class action, Plaintiff and proposed Class Members will continue to
  suffer harm as a result of Defendants' unlawful conduct; and

- This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and proposed Class Members can seek redress for the harm caused by Defendants.

54.     In the alternative, the Classes may be certified for the following reasons:

- The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

- Adjudications of individual Class and Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other proposed Class who are not parties to the adjudication and may substantially impair or impede the ability of other proposed Class Members to protect their interests; and

- Defendants have acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to the proposed Classes as a whole.

**COUNT I**
**Violation of New York General Business Laws § 349**
**(On Behalf Of Plaintiff Bell And The New York Subclass)**

55.     Plaintiff Bell hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

56.     N.Y. Gen. Bus. Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

57.     Defendants' actions occurred in the conduct of business, trade, or commerce.

58.     Defendants' conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the N.Y. Gen. Bus. Law.

59.     Defendants' deceptive acts and practices were intended to mislead consumers in a material way in the process of purchasing Defendants' Products, and a reasonable consumer would be misled by their deceptive acts and practices.

60.     All of Defendants' deceptive acts and practices constitute conduct directed at consumers.

61.     Defendants intended that Plaintiff Bell and each of the other members of the New York Subclass would rely upon their deceptive conduct, and consumers, including Plaintiff Bell and proposed New York Subclass Members, did in fact rely upon deceptive conduct.

62.     Defendants' foregoing deceptive and unfair acts and practices, including its omissions, were and are deceptive acts or practices in violation of the N.Y. Gen. Bus. Law § 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, et seq., in that Defendants manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Product without any mention of the fact that the Product contains lead.

63.     Defendants' unconscionable, deceptive, and/or unfair practices caused actual damages to Plaintiff and the New York Subclass Members who were unaware that the Product contained lead.

64.     As a direct and proximate result of Defendants' deceptive acts and practices, including its omissions, Plaintiff Bell and New York Subclass Members have been damaged as alleged herein and are thus entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

65.     In addition, Plaintiff Bell and New York Subclass Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

66.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II
### Violation of New York General Business Laws § 350
### (On Behalf Of Plaintiff Bell And The New York Subclass)

67.     Plaintiff Bell hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

68.     N.Y. Gen. Bus. Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

69.     Defendants' actions occurred in the conduct of business, trade, or commerce.

70.     Defendants' foregoing acts and practices, including their advertising, were directed at consumers.

71.     Defendants' conduct, as described in the Complaint, constitutes "false advertising" within the meaning of the N.Y. Gen. Bus. Law §350, as Defendants publicly disseminating misleading false advertisements through advertising and marketing the Product, failing to disclose that the Product contains lead.

72.     Defendants' foregoing, consumer-oriented, unfair or deceptive acts and practices, including its advertising, representations, and omissions, constitutes false and misleading advertising in a material way in violation of the N.Y. Gen. Bus. Law § 350.

73.     Defendants' false, misleading, and deceptive advertising and representations include misrepresenting and misleadingly marketing and labeling the Product was fit for its intended purpose of consumption and omitting and failing to disclose that the Product contains lead.

74.     Defendants' false, misleading, and deceptive advertising and representations of fact were and are directed at consumers.

75.     Defendants' false, misleading, and deceptive advertising and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

76.     Defendants' false, misleading, and deceptive advertising and representations of fact have resulted in consumer injury or harm to the public interest.

77.     Defendants intended that Plaintiff Bell, and the other members of the New York Subclass, would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct.  Defendants engaged in misleading and deceptive advertising that failed to disclose that the Product contains lead.  Defendants chose to label the Product in this way to impact consumer choices and gain market dominance, as they are aware that all consumers who purchased the Product would be unwilling or less likely to buy the Product if those consumers knew the Product contained lead.  Thus, Defendants' advertising and labeling was an unfair, untrue, and misleading practice.

78.     Consumers, including Plaintiff Bell and New York Subclass members, either would not have purchased the Product or would have paid less for them had they known that the Product contains lead.

79.     As a direct and proximate result of Defendants' deceptive acts and practices, including their use or employment of false advertising, Plaintiff Bell and each of the other members of the New York Subclass have sustained actual damages in an amount to be proven at trial.

80.     In addition, Plaintiff Bell and New York Subclass members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

81.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT III
### Unjust Enrichment
### (In the Alternative To Count I And On Behalf of the National Class and, alternatively, the New York Subclass)

82.     Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

83.     Plaintiff and the other members of the Classes conferred benefits on Defendants by purchasing the Product.

84.     Defendants have been unjustly enriched in retaining the revenues derived from the purchase of the Product by Plaintiff and the other members of the Classes.

85.     Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiff and the other members of the Classes because they would have not purchased the Product if Defendants had disclosed that the Product contained lead.

86.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and the other members of the Classes for their unjust enrichment, as ordered by the Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class Members, prays for judgment and relief against Defendants as follows:

a)  For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as representatives for the Classes and Plaintiff's counsel to serve as Class Counsel;

b)  For an order enjoining Defendants from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendants wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendants wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: May 9, 2024                     Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

*/s/ Russell M. Busch*
Russell M. Busch (5881354)
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
E-Mail: *rbusch@milberg.com*

Nick Suciu III*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:    (313) 303-3472
E-Mail:  *nsuciu@milberg.com*

Trenton R. Kashima*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
E-Mail: *tkashima@milberg.com*

Luis Cardona*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
1311 Ponce de Leon Ave.
San Juan, PR 00985
Tel: (516) 741-5600, Ext. 5861
E-Mail: *lcardona@milberg.com*

**BURSOR & FISHER, P.A.**
Joshua B. Glatt*
Ines Diaz Villafana*
1990 North California Blvd, Suite 940
Walnut Creek, California 94596
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jglatt@bursor.com
        idiaz@bursor.com


*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and the Proposed Class*