UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
DONNA BELL, :
:
Plaintiff, :
: 24-CV-3559 (JMF)
-v- :
: OPINION AND ORDER
GREENBRIER INTERNATIONAL, INC. et al., :
:
Defendants. :
:
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    Plaintiff Donna Bell brings this putative class action against Defendants Greenbrier International, Inc., which does business as Dollar Tree ("Dollar Tree"), and Colonna Brothers, Inc. ("Colonna"), alleging that Supreme Tradition Ground Cinnamon — manufactured by Colonna and sold by Dollar Tree — "is defective because, undisclosed to consumers, it is contaminated with lead." ECF No. 31 ("FAC"), ¶¶ 1, 5-7.  Bell brings claims under New York law, namely for deceptive business practices and false advertising pursuant to Sections 349 and 350 of the General Business Law and for unjust enrichment. *Id.* ¶¶ 61-92.  Defendants each now move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Bell's First Amended Complaint.  *See* ECF Nos. 32 & 33.  For the reasons that follow, Defendants' motions are GRANTED on the ground that Bell lacks standing.

## BACKGROUND

    The following facts are, unless otherwise noted, taken from the First Amended Complaint ("Complaint") and assumed to be true.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  That said, the Court may also consider documents incorporated by reference in, or "integral" to, the Complaint.  *Shenzhenshi Liangyuankeji*

*Youxiangongsi v. Antsy Labs LLC*, No. 24-CV-1223 (JMF), 2024 WL 4817470, at \*2 (S.D.N.Y. Nov. 18, 2024); *see id.* (defining a document as "integral to the complaint if the complaint relies heavily upon its terms and effect" (internal quotation marks omitted)).  Where such a document "contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."  *Id.* (internal quotation marks omitted).

Colonna makes and distributes cheese, spices, and other food items.  *See* FAC ¶ 6.  It distributes Colonna brand spices and provides private label service — meaning it distributes spices — for other companies, including Dollar Tree.  *Id.* ¶¶ 6-7.  Dollar Tree owns the "Supreme Tradition" name and contracts with Colonna to manufacture and distribute Supreme Tradition spices.  *Id.* ¶ 7.  In early 2024, the U.S. Food and Drug Administration ("FDA") conducted a "targeted lead analysis survey" of select ground cinnamon products following an October 2023 voluntary recall of cinnamon apple puree and applesauce products due to elevated lead levels linked to the cinnamon in those products.  *Id.* ¶ 22.  In conducting the study, the FDA collected and tested seventy-five samples from different retail locations.  *Id.* ¶ 24.

On March 6, 2024, the FDA issued an "Alert" advising that its testing had revealed that 2.25 ounce jars of Supreme Tradition Ground Cinnamon with specific "lot codes" showed a possible health risk due to elevated levels of lead.  *See FDA Alert Concerning Certain Cinnamon Products Due to Presence of Elevated Levels of Lead*, U.S. Food & Drug Administration (Mar. 6, 2024), https://www.fda.gov/food/alerts-advisories-safety-information/fda-alert-concerning-certain-cinnamon-products-due-presence-elevated-levels-lead [https://perma.cc/BS5M-ETZZ] ("FDA Alert"); *see* FAC ¶ 25 (discussing the FDA Alert).  Specifically, as to Supreme Tradition Ground Cinnamon, the Alert listed the following seven "lot codes" with their associated "best by" dates:  09/29/25 09E8; 04/17/25 04E11; 12/19/25 12C2; 04/12/25 04ECB12; 08/24/25 08A;

04/21/25 04E5; and 09/22/2025 09E20.  *See* FDA Alert.  The FDA advised consumers "to throw away and not to buy" the listed products and recommended that Colonna "voluntarily recall" the products.  *Id.*; *see* FAC ¶ 25.

On the same day the FDA issued its Alert, Colonna announced a "voluntary" recall of its 2.25 ounce Supreme Tradition Ground Cinnamon.  *See* ECF No. 33-3 ("Recall Notice"); *see* FAC ¶¶ 28-30 & nn.17-18 (discussing the Recall Notice).  The company's announcement noted that the product "was distributed nationwide through retail stores and mail order" and that the recall was in response to the FDA's testing and done at the FDA's request.  *See* Recall Notice; *see also* FAC ¶¶ 29-30.  Significantly, the announcement explicitly stated (in bold type) that "[o]**nly the following lost codes (found on the jar above the label – below the cap) were affected**," and then listed the same seven "lot codes" and "best buy" dates that appeared in the FDA's Alert.  *See* Recall Notice.  It noted that the FDA had "stat[ed] that the lot codes above contain elevated levels of lead that the FDA deems a potential health risk" and advised that consumers who had purchased Supreme Tradition Ground Cinnamon "**with the lot codes listed above**" could "discard it or return it . . . for a full refund."  Recall Notice (emphasis in original).

Bell purchased a jar of Supreme Tradition Ground Cinnamon in or around March 2024 — "around the same time" that the FDA issued its Alert — at a Dollar Tree store in the Bronx.  FAC ¶¶ 37-38.  The Complaint notes that the Supreme Tradition Ground Cinnamon "affected by lead contamination include[d] best by dates ranging from 04/2025 to 09/2025," a range that "demonstrates a widespread issue with lead contamination, ranging at least for a period of 5 months."  *Id.* ¶ 39.  The jar that Bell purchased had a "best by" date of June 2025 — "within the range of time known to demonstrate a widespread issue of lead contamination."  *Id.*  She alleges that she would not have purchased the product (or would have paid significantly less for it) had

3

she been aware of the presence of lead. She alleges that this injury is "underscored" by the fact that alternatives that are not contaminated with lead exist at comparable price points and that she may be harmed in the future because she wants to purchase the product again but cannot know or trust that it will be truthfully labelled and safe. *Id.* ¶ 46.

## LEGAL STANDARDS

Defendants' motions are brought pursuant to Rules 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction to hear the case. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up), *aff'd*, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). A Rule 12(b)(6) motion, on the other hand, tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).

**DISCUSSION**

The Court begins, as it must, with Defendants' motions to dismiss for lack of standing, as standing is jurisdictional. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 102 (1998). It is well established that "the irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Injury in fact means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (cleaned up). That a suit may be a putative class action, as this one is, "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted).

In this case, Bell asserts a "price-premium" theory of injury in fact, alleging that, had she been aware of the lead levels in the Supreme Tradition Ground Cinnamon product, "she would not have purchased the Product or would have paid significantly less for the Product." FAC ¶ 41; *see* ECF No. 35 ("Pl.'s Opp'n"), at 8-11. That form of injury "has been broadly accepted in the Second Circuit." *Lurenz v. Coca-Cola Co.*, No. 22-CV-10941 (NSR), 2024 WL 2943834, at *2 (S.D.N.Y. June 10, 2024) (citing cases). Significantly, however, Bell "still 'must plead enough facts to make it plausible that [she] did indeed suffer the sort of injury that would entitle [her] to relief.'" *Id.* (quoting *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021)). To do so, she must "plausibly allege that she herself purchased [Supreme Tradition Ground Cinnamon] that contained [an elevated level of] lead." *Kell v. Lily's Sweets, LLC*, No. 23-CV-147 (VM), 2024 WL 1116651, at *3 (S.D.N.Y. Mar. 13, 2024); *see, e.g.*,

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("In the context of defective products, it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect."). "Otherwise, [her] claim that [she] purchased a product worth less than the product for which [she] bargained necessarily fails, and [she is] not entitled to relief under the benefit-of-the-bargain theory." *Huertas v. Bayer US LLC*, — F.4th —, No. 23-2178, 2024 WL 4703136, at *5 (3d Cir. Nov. 7, 2024).

Here, it is undisputed that Bell does not allege any facts tending to show that the single jar of cinnamon she purchased had elevated levels of lead. That is, she does not allege that the jar she purchased was from one of the lots included in the FDA Alert or Defendants' recall. *Cf. Huertas*, 2024 WL 4703136, at *2, 8 (holding that the plaintiffs who had purchased products from lot numbers specified in a recall had plausibly alleged injury sufficient to support Article III standing). Nor does she allege that she tested the cinnamon she actually purchased for lead. *See, e.g.*, *Onaka v. Shiseido Americas Corp.* ("*Onaka II*"), No. 21-CV-10665 (PAC), 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024) (describing testing of the plaintiff's own purchases as "[t]he most direct route" to establish standing under a price-premium theory of injury). Thus, to establish Article III standing, Bell must plausibly allege that the presence of elevated lead in Supreme Tradition Ground Cinnamon was "so widespread as to render it plausible" that she purchased a jar with elevated lead. *Onaka v. Shiseido Ams. Corp.* ("*Onaka I*"), No. 21-CV-10665 (PAC), 2023 WL 2663877, at *4 (S.D.N.Y. Mar. 28, 2023). Put differently, she must allege "facts from which the Court could extrapolate that [the FDA's] isolated testing should apply broadly to Defendant's Products, regardless of when they were purchased." *Id.* at 5.

Bell's efforts to do so fall short. She alleges "a widespread issue of lead contamination, ranging at least for a period of 5 months," and that the jar of Supreme Tradition Ground Cinnamon she purchased "was . . . manufactured within the range of time known to demonstrate a widespread issue of lead contamination." FAC ¶ 39. But the facts on which she relies do not support the weight that she puts on them. That is, the FDA Alert establishes only that seven specific lots of 2.25 oz Supreme Tradition Ground Cinnamon, with "best by" dates ranging from April 12, 2025, to September 29, 2025, were found to have elevated lead levels. *See* FDA Alert. That does not establish that all or most Supreme Tradition Ground Cinnamon contained elevated lead levels. It does not even establish that all or most Supreme Tradition Ground Cinnamon manufactured during a particular time contained elevated lead levels. After all, the First Amended Complaint does not allege the relationship between the date of manufacture and the "best buy" date; it does not allege whether Supreme Tradition Ground Cinnamon was manufactured at one or more than one plant; and it does not allege whether the causes of the elevated lead levels were pervasive or idiosyncratic. On top of all that, the First Amended Complaint does not allege that the jar of cinnamon that Bell purchased was actually manufactured in the same period and at the same plant as the affected lots. It alleges only that the "best buy" date on her jar fell within the range of "best buy" dates on the lots tested by the FDA. Put simply, the "temporal proximity" between the "best buy" dates on the lots found by the FDA to have elevated lead levels and the "best buy" date on Bell's jar of cinnamon "cannot alone support the inference that" there was an elevated lead level in the product Bell "actually purchased." *Lurenz*, 2024 WL 2943834, at *4.

That conclusion is consistent with those reached by other courts in similar circumstances. *See, e.g.*, *Huertas*, 2024 WL 4703136, at *8 (finding that plaintiffs lacked standing where the

7

only connection between the products they had purchased and products that had been recalled was "the timeframe" during which they made their purchases); *In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 97 F.4th 525, 530 (7th Cir. 2024) (finding that the plaintiffs lacked standing even where they pleaded "some facts about a persistent problem at" the facility where their powdered infant formula was manufactured because they "did not allege facts suggesting that contamination of [the manufacturer's] products was sufficiently widespread so as to plausibly affect any given product, including the ones they purchased"); *Lurenz*, 2024 WL 2943834, at *3 (finding that the plaintiff lacked standing where he "alleges that he tested only a single sample, and does not allege that the sample was taken from a store he frequented, nor that he 'regularly' made purchases and the presence of PFAS in the Product is the result of a 'pervasive' or 'systematic' practice"); *Kell*, 2024 WL 1116651, at *4 (holding that "[i]t would be impermissible conjecture to extrapolate [*Consumer Reports*] findings to every Lily's Extra Dark Chocolate 70% Cocoa chocolate bar ever sold, or to the specific Products purchased by [the plaintiff], without some specific factual basis to do so" and where plaintiff "does not plead that she regularly obtained her chocolate from the same source as *Consumer Reports*"); *Hernandez v. Wonderful Company LLC*, No. 23-CV-1242 (ER), 2023 WL 9022844, at *5 (S.D.N.Y. Dec. 29, 2023) ("Hernandez does not allege any bottle of the Product she purchased actually tested positive for the presence of any PFAS.  While it is true that this need not be fatal, if the independent testing is reasonably near in time to [Hernandez's] own purchases, as here, a plaintiff must still allege facts sufficient to show that the defects pervaded an entire line or market of products." (cleaned up)); *Onaka II*, 2024 WL 1177976, at *2 (observing that temporal proximity between independent testing and a plaintiff's purchased products is not enough to "meaningfully link" the test results to the purchased products, and that a plaintiff must also

allege that the defect "is so widespread as to render it plausible that [the] [p]laintiff purchased a mislabeled Product at least once" (cleaned up)).

The Eighth Circuit's recent decision in *Huertas* is especially instructive. In October 2021, Bayer recalled millions of dollars' worth of Lotrimin and Tinactin, spray products used to treat skin infections such as athlete's foot and ringworm, after discovering that products dating back to 2018 were contaminated with benzene. As here, however, the recall covered only certain products — namely, "unexpired 'spray products with lot numbers beginning with TN, CV, or NAA' that were 'distributed between September 2018 to September 2021.'" *Huertas*, 2024 WL 4703136, at *1. All nine plaintiffs in the case had "purchased Lotrimin or Tinactin spray products during the recall period from September 2018 to September 2021." *Id.* at *2. But "only four of the nine . . . provided lot numbers specified in the recall." *Id.* On appeal, the Eighth Circuit held that these four plaintiffs had plausibly alleged injury given both the recall and the independent testing. By contrast, however, the court concluded that the five plaintiffs who had "failed to allege a TN, CV, or NAA lot number" lacked Article III standing. *Id.* at *8. "Without any information to tie these Plaintiffs' products to the recall other than the timeframe during which they made their purchases, these Plaintiffs' allegations 'stop[] short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 546). Here, Bell is in the same position as the five plaintiffs held to lack standing in *Huertas*: She does not provide "any information" to tie her jar of cinnamon to the recall "other than the timeframe." *Id.*

By contrast, the cases on which Bell relies — principally, *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017), and *Levy v. Hu Prods. LLC*, No. 23-CV-1381 (AT), 2024 WL 897495 (S.D.N.Y. Mar. 1, 2024) — are distinguishable. In *John*, the Second Circuit concluded — drawing all inferences in favor of the plaintiff — that standing had been plausibly

9

alleged where the plaintiff had "made monthly purchases of Whole Foods pre-packaged cheese and cupcakes" and cited a "press release announcement that 89 percent of Whole Foods' pre-packaged products tested . . . were mislabeled, and . . . that the mislabeling was 'systematic' and routine[].'" 858 F.3d at 736.  Relying on *John*, *Levy* found that standing had been plausibly alleged where the plaintiff had "purchased the Products 'almost on a weekly basis' from New York stores" — the same area from which the tested samples had been purchased — "in the relevant time period." 2024 WL 897495, at *3.  At most, therefore, *John* and *Levy* "permit[] a court to infer that the plaintiff purchased a specific product with a defect that had been plausibly reported by third-party tests to be widespread, systematic, routine, or uniform." *Kell*, 2024 WL 1116651, at *5.  They do not support standing where, as here, test results cannot "be reasonably extrapolated to the plaintiff's individual purchase." *Id.* at *5 & n.5 (citing cases).

## CONCLUSION

For the foregoing reasons, the Court concludes that Bell fails to "plead sufficient facts to make it plausible that [she] did indeed suffer the sort of injury that would entitle [her] to relief." *Lurenz*, 2024 WL 2943834, at *4 (internal quotation marks omitted).  Accordingly, her claims must be and are dismissed for lack of subject-matter jurisdiction.  Moreover, the Court declines to grant Bell leave to amend her Complaint for a second time.  Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted).  Here, Bell requests leave to amend in the event that the Court finds her pleadings insufficient, *see* Pl.'s Opp'n 20, but her request is *pro forma* and does not suggest that she is in possession of facts that would cure the problems with her lawsuit.  *See,*

*e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014). Additionally, the Court already granted Bell leave to amend her original complaint in response to the Defendants' earlier motions to dismiss and explicitly warned that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 28.

The Clerk of Court is directed to terminate ECF Nos. 32 and 33, enter judgment for Defendants consistent with this Opinion and Order, and close the case.

SO ORDERED.

Dated: November 26, 2024
      New York, New York

                                                JESSE M. FURMAN
                                         United States District Judge